UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAN ROBERTSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-851** |
| **MELANIE MOSS, WARDEN** | **SECTION: "P"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE** as time-barred.

Petitioner, Dan Robertson, is a state prisoner incarcerated at the Claiborne Parish Detention Center in Homer, Louisiana. Robertson was charged with attempted simple burglary.[1] After a trial, the jury found Robertson guilty as charged.[2] On March 16, 2022, the trial court sentenced Robertson to a term of imprisonment of six years at hard labor.[3] The state filed a multiple bill charging Robertson as a third felony offender.[4] On March 23, 2022, the trial court adjudicated Robertson as a third felony offender, vacated his sentence and sentenced Robertson to a term of

---

[1] Rec. Doc. 10 at 3, Bill of Information dated January 26, 2021.

[2] Id. at 35, minute entry dated February 1, 2022; id. at 46, verdict dated February 1, 2022.

[3] Id. at 99, minute entry dated March 16, 2022; id. at 100, Uniform Sentencing Commitment Order dated March 16, 2022; id. at 172–83, sentencing transcript of March 16, 2022.

[4] Id. at 102–03, multiple bill dated March 16, 2022.

imprisonment of eight years to be served at hard labor and without the benefit of probation or suspension of sentence.[5]

On March 29, 2023, the Louisiana Fifth Circuit Court of Appeal affirmed Robertson's conviction and sentence.[6] Robertson did not seek further review from the Louisiana Supreme Court.

In November 2023, Robertson filed a motion for request for production of documents.[7] The state district court granted the motion in part and ordered that Robertson be provided with copies of the trial and sentencing transcripts.[8] The clerk of court advised Robertson that his transcript requests were sent to the court reporter.[9] On December 21, 2023, Robertson again requested the transcripts as well as additional documents.[10] The clerk of court advised that it did not maintain the records and/or they were not part of the record.[11] On January 19, 2024, the court reporter provided Robertson with the transcripts of his original sentencing and multiple bill sentencing.[12] On February 11 and 27, 2024, Robertson again requested a copy of his trial transcript.[13] On March 21, 2024, Robertson was provided with a copy of the trial transcript.[14]

---

[5] Id. at 106, minute entry dated March 23, 2022; id. at 184–95, habitual offender hearing and sentencing transcript of March 23, 2022.

[6] State v. Robertson, 360 So. 3d 582 (La. App. 5th Cir. 2023); Rec. Doc. 10 at 127–44.

[7] Rec Doc. 10 at 145–46, Motion for Production of Particularized Documents signed November 24, 2024.

[8] Id. at 149, Order dated December 7, 2023; id. at 151, Order dated December 11, 2023.

[9] Id. at 157.

[10] Id. at 166, letter dated December 21, 2023.

[11] Id. at 170, letter dated December 28, 2023.

[12] Id. at 171, letter dated January 19, 2024.

[13] Id. at 196, letter dated February 11, 2024; id. at 204–12, letter dated February 27, 2024.

[14] Id. at 214, letter dated March 21, 2024.

On June 6, 2024, Robertson filed an application for post-conviction relief.[15] On July, 25, 2024, the state district court denied relief.[16] On November 14, 2024, the Louisiana Fifth Circuit denied Robertson's related writ application.[17] On February 19, 2025, the Louisiana Supreme Court denied Robertson's writ application, finding "Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[18]

Two months later, on April 18, 2025, Robertson filed his federal application seeking habeas corpus relief claiming: (1) ineffective assistance of counsel in pretrial and trial proceedings; (2) ineffective assistance of counsel for failing to object to the admission into evidence of a bandana found at the crime scene; and (3) the state courts' denial of his ineffective assistance of trial counsel claims violated due process and equal protection.[19]

The state responds that Robertson's petition should be dismissed as untimely.[20] Robertson, in his reply brief, claims that he is entitled to equitable tolling due to COVID-19 pandemic restrictions at the correctional facility.[21]

## I.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28

---

[15] Rec. Doc. 10 at 351–64, Uniform Application for Post-Conviction Relief signed June 6, 2024 (stamped June 12, 2024).
[16] Id. at 464–66, Order of July 25, 2024.
[17] State v. Robertson, No. 224-KH-473, 2024 WL 4812883 (La. App. 5th Nov. 14, 2024); Rec. Doc. 481–87.
[18] State v. Robertson, 400 So. 3d 911 (La. 2025); Rec. Doc. 1055–56.
[19] Rec. Doc. 3.
[20] Rec. Doc. 11 at 7–9.
[21] Rec. Doc. 12 at 3–5.

U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). For purposes of applying the AEDPA, Robertson's petition is deemed filed on April 18, 2025.[23] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

## II. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[22] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998) (mailbox rule applies to determine if AEDPA applies even if filing fee is paid later); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Robertson dated his petition April 18, 2025, which is the earliest possible date officials could have received the pleadings him. Rec. Doc. 3 at 12.

>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In its response, the state argues that Subsection A is controlling in the instant case.[24] Regarding that subsection, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

In this case, Robertson's conviction became final on April 28, 2023, 30 days after the Louisiana Fifth Circuit affirmed his conviction on direct appeal, when Robertson did not file for review in the Louisiana Supreme Court. La. Sup. Ct. Rule X § 5 (setting a 30-day period for seeking review in the Louisiana Supreme Court); La. Code Crim. P. art. 922 (addressing finality of appeal judgment); Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires."). The AEDPA one-year limitations period commenced on that date and expired one year later, on April 29, 2024.[25]

---

[24] Rec. Doc. 11 at 8.

[25] Because the 365th day of the limitations period fell on a Sunday, Robertson's deadline was extended through Monday, April 29, 2024. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

But, again, Robertson did not file his habeas petition until April 18, 2025, and his application must be dismissed as untimely unless the statute of limitations period was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). But that provision is subject to a significant limitation: it does not apply to every type of post-conviction filing; rather, it "applies **only** to those state post-conviction filings **that seek reexamination of the relevant state-court conviction or sentence**." Kholi v. Wall, 582 F.3d 147, 151 (1st Cir. 2009) (emphasis added). See also Brian R. Means, Federal Habeas Manual § 9A:74 (June 2025 Update) ("[A] state court application that does not seek judicial review of a judgment or provide the state court with authority to order relief from a judgment generally will not toll the limitations period.").

Here, Robertson had no such applications pending in the state courts during his one-year period. Instead, his only state court filings during that one-year period were his various requests for production of documents. Those requests did not seek such reexamination of his conviction or sentence; rather, they were merely preliminary steps taken in preparation of an anticipated filing which would seek such a reexamination at some indeterminate time in the future. See, e.g., Wall v. Kholi, 562 U.S. 545, 556 n.4 (2011) (noting that "a motion for post-conviction discovery or a motion for appointment of counsel ... generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment"). A petitioner's efforts to obtain copies of documents and transcripts from the state courts simply do not constitute other collateral review for purposes of the AEDPA statutory tolling calculation. See

Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); Brown v. Cain, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000); Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002).

Of course, on June 6, 2024, Robertson finally filed his application for post-conviction relief seeking reexamination of his conviction. However, that application is of no consequence under § 2244(d)(2), because Robertson's federal limitations period had already expired more than a month prior on April 29, 2024. Therefore, his application could not possibly afford him any tolling benefit. See Madden v. Thaler, 521 F. App'x 316, 320 (5th Cir. 2013); Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. Jul. 24, 2010) (citing Williams v. Cain, No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)), aff'd, 253 F.3d 702 (5th Cir. 2001). That is so because once the federal limitations period expired, "[t]here was nothing to toll." Butler, 533 F.3d at 318.

For all these reasons, Robertson is not entitled to statutory tolling.

The Court next considers equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). That said, a petitioner bears the burden of proof to establish entitlement to equitable tolling, Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002), and, frankly, "equitable tolling is unavailable in most cases...." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Specifically, "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely

7

filing." Holland, 560 U.S. at 649 (emphasis added; internal quotation marks omitted). "[E]quitable tolling applies principally where the defendant actively misleads the plaintiff about the cause of action or prevents the plaintiff from asserting his rights in some extraordinary way." Jones v. Lumpkin, 22 F. 4th 486, 490 (5th Cir. 2022) (citations omitted). Regarding the two prongs of the Holland test, the United States Supreme Court has explained:

> [W]e have expressly characterized equitable tolling's two components as "elements," not merely factors of indeterminate or commensurable weight. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements"). And we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other. See, e.g., Lawrence v. Florida, 549 U.S. 327, 336-337, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (rejecting equitable tolling without addressing diligence because habeas petitioner fell "far short of showing 'extraordinary circumstances' "); Pace, supra, at 418, 125 S.Ct. 1807 (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," that, "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence").

Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250, 256 (2016).[26] Here, Robertson has not met either prong.

As indicated, Robertson claims that he is entitled to equitable tolling because, due to COVID-19 restrictions at the correctional facility at which he has been housed since April 8, 2022, he was denied access to the law library and inmate counsel, and access to his legal materials was delayed.[27] He also appears to contend that he did not receive a copy of the appellate record until

---

[26] Menominee Indian Tribe was not a habeas corpus case. However, its equitable tolling discussion is expressly based on the Supreme Court's interpretation of Holland; therefore, the reasoning therein is applicable to habeas cases. See, e.g., Brian R. Means, Federal Habeas Manual § 9A:83 (June 2025 Update).

[27] Rec. Doc. 12 at 3–4.

November 2023, and that he did not receive the trial transcript until March 2024.[28] He contends that, as a result, he was delayed in filing his state application for post-conviction relief.

Initially, the purpose of the federal equitable tolling doctrine relates to the suspension of the federal limitations period under the AEDPA, not state law filing deadlines for state court pleadings. See Pace, 544 U.S. at 419; Davis, 158 F.3d at 811. Nevertheless, to the extent that Robertson's pleas to explain his delay in filing his application for post-conviction relief similarly led to his tardiness in federal court, he has not established a basis for granting the extraordinary remedy of equitable tolling of the AEDPA's one-year filing period.

First, while Robertson claims he was denied assistance from inmate counsel, he candidly admits that he briefly had the assistance of inmate counsel from March 2023 to June 2023, although he does not mention whether he had any assistance thereafter.[29] Regardless, prisoners have no constitutional right to either an attorney or "inmate counsel" in state post-conviction proceedings. See Martinez v. Johnson, 255 F.3d 229, 239 (5th Cir. 2001). Robertson provides no specific dates or even specific instances when he was prevented from accessing the law library and his legal materials. Robertson further provides no actual evidence "that lack of access to legal materials *actually prevented*" him from filing either his application for post-conviction relief or his federal petition for writ of habeas corpus earlier.[30] Krause v. Thaler, 637 F.3d 558, 56162 (5th Cir. 2011) (emphasis in original); accord Banks v. Hooper, No. 21-1788, 2024 WL 3100690, at *5 (E.D. La. April 2, 2024), appeal dismissed, No. 24-30387 (5th Cir. Aug. 21, 2024). Nor is the mere existence of the COVID-19 pandemic, without more, an "extraordinary circumstance." United States v.

---

[28] Id. at 4; Rec. Docs. 12-2, 12-3, 12-4, and 12-5.
[29] Rec. Doc. 12 at 4 n. 2.
[30] While Robertson claims that the process of obtaining his legal materials from the property store room was "burdensome," he also states "in general [it] had been timely." Id. at 4.

Clay, No. 2:20-236, 2021 WL 2018996, at *3 (S.D. Tex. May 18, 2021); Hines v. United States, No. 20-CV-10064 (CS), No. 17-CR-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021).

The fact that Robertson did not receive a copy of his appellate record until November 2023 does not entitle him to equitable tolling. An inmate's lack of access to his state court records does not present an "exceptional circumstance" to warrant equitable tolling. See Cofer v. Johnson, 226 F.3d 643, 2000 WL 1029201, at *1 (5th Cir. 2000) (per curiam) (Table, Text in Westlaw) (rejecting claim for equitable tolling based on delay in receiving a copy of state court records). Further, Robertson was in possession of those records for more than five months prior to the expiration of the AEDPA deadline. Yet, he delayed filing his state application for post-conviction relief until June 2024, after the AEDPA deadline had expired. Even after denial of that application, Robertson waited an additional two months to file his federal petition.

Finally, any claim that Robertson is entitled to equitable tolling due to his requests for trial and sentencing transcripts is not supported by law. A delay in the receipt of a transcript of a proceeding at which Robertson was present does not merit equitable tolling. Walker v. McCain, No. 16-16170, 2017 WL 5197232, at *5 (E.D. La. Aug. 16, 2017) (citations omitted), adopted, 2017 WL 5177928 (E.D. La. Nov. 8, 2017). Moreover, the fact that Robertson did not obtain a copy of his trial transcript until March 2024, did not prevent him from seeking post-conviction relief earlier in state court or timely filing a habeas petition in federal court. See Schaffer v. Day, No. 21-2341, 2022 WL 2232492, at *2 (E.D. La. May 31, 2022) (noting that there is no requirement under Louisiana law to submit a transcript with a post-conviction application (citations omitted)), adopted, 2022 WL 2208863 (E.D. La. June 21, 2022), appeal dismissed, No. 22-30452, 2022 WL 18448118 (5th Cir. Sept. 6, 2022). Robertson could have filed his state

10

application for post-conviction relief prior to his receipt of the transcripts, and, had he done so, while his state court post-conviction proceeding was pending, Robertson could have timely filed a protective federal habeas corpus petition and requested that the federal proceeding be stayed while he pursued his state-court remedies. See, e.g., Pace, 544 U.S. at 416–17; Madden v. Thaler, 521 F. App'x 316, 321 (5th Cir. 2013). Although Robertson may have been unaware of these options, a prisoner's *pro se* status, lack of legal training, ignorance of the law and filing deadlines, and even reliance on inmate counsel do not constitute rare and exceptional circumstances warranting equitable tolling. See, e.g., Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002) ("[N]either 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling."); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."); Smallwood v. Cain, No. 12-2812, 2013 WL 5757663, at *10 (E.D. La. Oct. 23, 2013) ("The fact that Smallwood is not educated in the law or is reliant upon assistance from inmate counsel on post-conviction does not warrant equitable tolling. In fact the United States Fifth Circuit has held that circumstances such as lack of legal assistance in preparing post-conviction pleadings, ignorance of the law, lack of knowledge of filing deadlines, and temporary denial of access to or inadequacy of research materials or a prison law library are not sufficient to warrant equitable tolling." (citations omitted)).

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by asserting a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In McQuiggin, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup[ v. Delo, 513 U.S. 298 (1995)] and House[ v. Bell, 547 U.S. 518 (2006)],

11

or, as in this case, expiration of the statute of limitations." McQuiggin, 569 U.S. at 386. Here, it appears that Robertson claims that he is actually innocent of the crime at issue.

In assessing such a claim of actual innocence, a federal habeas court normally first examines the evidence presented at trial and on which the petitioner's conviction was based. See, e.g., Johnson v. Cain, No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014). Here, Robertson was convicted of attempted simple burglary of a 2017 Chevy Tahoe. In the instant case, the Louisiana Fifth Circuit Court of Appeal summarized the evidence as follows:

> Detective Brent Baldassara, assigned to the burglary theft section of the Jefferson Parish Sheriff's Office ("JPSO"), testified he worked a "paid detail" patrolling the Metairie Country Club subdivision from 11:00 P.M. on November 22, 2020 until 7:00 A.M. on November 23, 2020. He stated that he has worked this paid detail for "around one year." When he patrols the area, he drives an unmarked vehicle that has sirens and lights. On November 22, 2020, while driving north in the 500 block of Iona Street, he observed an unidentified black male wearing dark-colored clothing and a protective "face covering" walking southbound on Iona Street towards Avenue E. When the unidentified man noticed his vehicle, he ran and hid behind some bushes in a nearby residence. Detective Baldassara testified that he stopped his vehicle, identified himself as "the police," attempted to locate the subject, and notified headquarters of the incident.
>
> Detective Baldassara testified that his search was unsuccessful and he returned to his vehicle. He "circled the block" and returned to Iona Street. Detective Baldassara stated that he saw the suspect a second time when he reappeared from behind some bushes and the suspect ran into the rear yard of a residence "going back towards Hector" Avenue. He proceeded to the 500 block of Hector Avenue, where he observed the arrival of assisting officers, including Deputy Nick Songy and Deputy Davis. Deputy Songy noticed a side gate open at 524 Hector Avenue. The three officers went through the gate into the rear yard of the residence. Detective Baldassara testified that he noticed the subject "squatting" next to some bushes along the rear fence. He recounted that the subject was wearing the same clothing as the individual he observed running away from him near Iona Street.
>
> Detective Baldassara testified that the subject was detained at that time, identified himself, and he was placed in his patrol vehicle. Defendant told the officers that he resided at 3501 Roger Williams Boulevard, in New Orleans. After defendant was

secured in the vehicle, Deputy Songy returned to the rear yard of 524 Hector Avenue and discovered a bandana on the ground where defendant was observed "squatting." Defendant told the officers that he had been at a bar on Airline Drive and was using the subdivision as a "cut-through" to get to his residence. Defendant did not identify the bar despite Detective Baldassara requesting the bar's name. Defendant was subsequently arrested based on his outstanding attachments and taken to JPSO.

After defendant's arrest, but on the same morning of November 23, 2020, Detective Baldassara was informed that there had been an attempted burglary of a vehicle in the area he was patrolling. He testified that he spoke to Clifford Brown, the owner of the vehicle, who resided at 529 Hector Avenue. Mr. Brown provided him with surveillance footage from his "Ring" camera showing the attempted burglary of his vehicle.

Upon reviewing the surveillance footage at trial, Detective Baldassara affirmatively identified defendant as the individual in the surveillance footage. He testified that the individual in the surveillance footage had on the same clothing as defendant when he was arrested. In the surveillance footage, he could see a maroon colored shirt underneath the black sweatshirt the individual was wearing. On the night he was arrested, defendant was wearing dark clothing with a maroon shirt underneath. Detective Baldassara also verified the bandana he logged into evidence after defendant's arrest as the same black and white bandana Deputy Songy found in the yard where defendant was found hiding. He stated that in the video, defendant attempted to open the vehicle's door with the bandana. Based on the bandana and defendant's clothing, Detective Baldassara made the decision to "rebook" defendant with attempted simple burglary. He explained that when defendant pulled the door handle with the bandana, the bandana got stuck, which caused an "audible sound" as the bandana was pulled free from the door handle. Detective Baldassara verified that defendant was wearing a maroon shirt when he was arrested after viewing a "booking photo" of defendant. Detective Baldassara also identified defendant in open court as the individual he arrested in the subdivision. In furtherance of the circumstantial evidence indicating defendant and the individual in the surveillance footage were the same, he testified that on the night he chased and arrested defendant, he did not see anyone else in the Metairie Country Club subdivision and that defendant was arrested in the general vicinity of the attempted burglary of the vehicle.

On cross-examination, Detective Baldassara conceded that his report provided that in the surveillance footage, defendant "utilized a dark-colored fabric which was identified as the bandana found in the rear year of where he was located." Detective Baldassara was shown the black and white bandana in evidence and agreed that the bandana is "mostly black." He was then shown the surveillance footage in which defense counsel stated that the bandana or fabric used on the door handle appeared "white or light colored." Detective Baldassara admitted that the "video is poor quality, distorted" but he made a decision based on his observations and the video,

stating that the bandana is black and white. He also conceded that although defendant's booking photo shows that his hair is gray, his report and the subsequent affidavit of arrest listed defendant's hair color as black and bald, respectively. He admitted he obviously had trouble identifying defendant's hair color. Despite the discrepancy in his hair color, Detective Baldassara testified that defendant was the individual he arrested in the rear yard of the residence on Hector Avenue and that he is the individual in the surveillance footage, as indicated by the clothing and bandana. Detective Baldassara testified defendant's clothes were not seized as evidence when he was initially arrested on his outstanding attachments because at that point they did not have any reports or complaints of criminal activity. He acknowledged that individuals flee from the police "sometimes" when they have outstanding warrants for their arrest.

JPSO Deputy Nicholas Songy testified that he was also working a "paid detail," patrolling the Metairie Country Club subdivision on November 22, 2020 and November 23, 2020. He stated he has been working this particular detail for approximately 11 years and is familiar with the area. He stated that normally, there is only one unit patrolling the area. However, during holiday seasons, the subdivision sometimes has two units patrolling because people go out of town. He testified that the night defendant was arrested in the subdivision was during the Thanksgiving holiday. Detective Songy testified that he was the "primary unit" and Detective Baldassara was the "back-up unit." Detective Baldassara radioed that he observed a subject in the 500 block of Hector or Iona and gave a description of the subject. Detective Songy arrived quickly to the location to assist with canvassing for the subject, and that the patrol area was a small area. He observed a gate "slightly ajar" on a residence that "back[ed] up to Iona." He went through the gate with Detective Baldassara and Deputy Davis. As they approached the back fence, he saw a "dark figure hunched over ... trying to hide his face, trying to look as dark as possible." They detained the subject and removed him from the backyard. Deputy Songy stated that he returned to the backyard to search for anything that may have been left behind or discarded by the subject, such as a gun. He testified that he found the bandana "in the exact area" where they located defendant. Because it was evidence and defendant was already in the patrol unit, Depute Songy testified that he gave the bandana to Detective Baldassara and he did not ask defendant if the bandana belonged to him. He identified defendant in open court as the individual he found in the backyard of the residence on Hector Avenue. Deputy Songy was shown the bandana in evidence and positively identified it as the bandana he found that night.

Deputy Songy testified that in order to access the subdivision from Airline Drive, a person would need to scale or climb several obstructions, such as an eight to ten-foot fence, a twelve-foot wall, or other gates. He explained that the area where the attempted burglary occurred was located in the opposite direction of where defendant indicated he was heading. Deputy Songy testified that this subdivision was not a "cut-through" to get from Airline Drive to defendant's residence unless the person was climbing fences and going through several backyards. He further

14

testified that no one else was walking throughout the subdivision when the officers were canvassing the area for the subject and that no one else matched the description of the subject except defendant. Deputy Songy testified that he saw the surveillance footage a day or two after defendant was arrested when he was informed of the attempted burglary that occurred in the same vicinity and directly across the street from where they found defendant.

Clifford Brown, the owner of the vehicle, testified that he resided at 529 Hector Avenue. On the morning of November 23, 2020, he reviewed the surveillance footage video from his Ring camera and discovered that between the early hours of that day and the late night hours of the prior night, someone attempted to break into his vehicle, a 2017 Chevrolet Tahoe. Mr. Brown testified that he did not recognize or know defendant and asserted that he did not give defendant or any other individual permission "to use, enter, or in any shape, form, or fashion go into [his] vehicle" on the night of November 22, 2020 through the morning of November 23, 2020. He provided a copy of the surveillance footage to JPSO and it was published to the jury.

The surveillance footage was a sixty-nine-second recording that captured a black male, wearing a white protective facemask, a dark-colored hooded sweatshirt, with a maroon shirt underneath, and dark-colored jeans, walking up to Mr. Brown's vehicle in his driveway. With the bandana, the man in the video pulled the locked front-passenger door handle. As he released the door handle, the bandana became "stuck." The individual pulled the banana out, which resulted in the door handle making an "audible sound," and he then walked away.[31]

At the next step of an "actual innocence" analysis, a federal court then considers the new evidence of actual innocence offered by the habeas petitioner. Specifically, the United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995).

---

[31] Robertson, 360 So. 3d at 586–89 (footnotes omitted); Rec. Doc. 10 at 130–35. The Louisiana Fifth Court of Appeal then went on to reject Robertson's claim that the foregoing evidence was insufficient to support his conviction. Id. at 589–94; Rec. Doc. 10 at 135–43.

Here, however, Robertson has presented no new evidence whatsoever relating to his factual innocence on the underlying crime to which he was found guilty. Without such evidence, he simply cannot meet even "the threshold requirement" for McQuiggin to apply, i.e., a showing that " 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " McQuiggin, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329). Accordingly, McQuiggin does not aid him.

Because Robertson is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than April 29, 2024, in order to be timely. His application was not filed until April 18, 2025, and, therefore, it is untimely.

## RECOMMENDATION

**IT IS RECOMMENDED** that Dan Robertson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[32]

---

[32] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this  21st  day of October, 2025.

                                                      **JANIS VAN MEERVELD**
                                         **UNITED STATES MAGISTRATE JUDGE**